UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X

TONY COLIDA,                           :

                    Plaintiff,         :      07 Civ. 8056 (KMW)(HBP)

    -against-                          :      REPORT AND
                                              RECOMMENDATION
NOKIA INC.,                            :_____

                    Defendant.         :

---------------------------------X


            PITMAN, United States Magistrate Judge:


            TO THE HONORABLE KIMBA M. WOOD, United States District

Judge,


I.  Introduction


            Pro se plaintiff, Tony Colida, brings this action

pursuant to 35 U.S.C. § 271, alleging that Nokia Inc.'s

("Nokia's") Model No. 6061 folding, cellular telephone (the "6061

telephone") infringes his United States Design Patents Numbers

Des. 318,050 (the "'050 Patent"), Des. 321,347 (the "'347

Patent"), Des. 321,349 (the "'349 Patent"), and Des. 321,184 (the

"'184 Patent")(collectively, the "Patents").

            Three motions are before the Court.  First, by two

unfiled notices of motion dated January 23, 2008 and February 5,

2008, plaintiff moves for an Order, pursuant to Rule 55 of the

Federal Rules of Civil Procedure, granting a default judgment

against Nokia.  Second, by notice of motion dated February 8, 2008 (Docket Item 5), Nokia moves for an Order, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure,[1] dismissing the Complaint.[2]  Third, by notice of motion dated April 1, 2008 (Docket Item 17), Nokia moves for an Order, pursuant to Rule 11(c) of the Federal Rules of Civil Procedure, imposing sanctions on plaintiff.

For the reasons set forth below, I respectfully recommend that plaintiff's motion for a default judgment be denied, that defendant's motion to dismiss be granted in its entirety, and that defendant's motion for Rule 11 sanctions be granted in part and denied in part.

II.  Facts

The facts underlying this case can be succinctly stated.  Plaintiff is the named inventor of several design patents for "portable cellular handset telephones" (Amended

---

[1]In this notice of motion, defendant also moved for an Order, pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure, dismissing the Complaint.  On March 12, 2008, I issued an Order, directing defendant to consider whether it wanted to press or withdraw its objections to the service of the Summons and Complaint (Docket Item 15).  By letter dated March 14, 2008, defendant withdrew this objection.  Accordingly, defendant's motion to dismiss is made pursuant to Rule 12(b)(6) only.

[2]Although defendant's motion to dismiss is directed at the Complaint, I deem it to be directed at the Amended Complaint (Docket Item 13).

Complaint, dated Feb. 25, 2008 ("Am. Compl.") at ¶¶ 5-6 & Exs. 1-4). The United States Patent and Trademark Office issued the '050 Patent on July 9, 1991; the '347 and '349 Patents on November 5, 1991; and the '184 Patent on October 29, 1991 (Am. Compl. at ¶ 6 & Exs. 1-4). Plaintiff alleges that he is the "designer, inventor and owner" of the designs disclosed in the Patents (Am. Compl. at ¶ 5).

Plaintiff alleges that defendant Nokia is in the business of advertising, selling, manufacturing, repairing and supporting portable cellular telephones, both within the United States and around the world (Am. Compl. at ¶ 3). Specifically, plaintiff claims that defendant manufactures, markets, and sells the 6061 telephone (Am. Compl. at ¶ 8 & Ex. 5). The gravamen of plaintiff's Amended Complaint is that Nokia's 6061 telephone infringes the Patents (Am. Compl. at ¶¶ 8-9, 13-14). Plaintiff seeks $1,000,000,000 in damages for defendant's alleged infringement (Am. Compl. at 4).

Annexed to this Report and Recommendation as exhibits one through four are copies of the designs claimed by the '050, '347, '349, and '184 Patents. Each Patent contains figures illustrating the telephone's design from front, rear, and side perspectives (Exs. 1-4 hereto). I have also annexed to this Report and Recommendation as exhibit five a page from defendant's website depicting its 6061 telephone (see

http://www.nokiausa.com/A4409137 (last visited May 6, 2008)) and
as exhibit six a page depicting its 6101 telephone (see
http://img.gsmarena.com/vv/pics/nokia/no6101_00.jpg (last visited
May 6, 2008)).

III.  Analysis

  A.  Motion for Default
      Judgment Pursuant to Rule 55

      In an affirmation supporting his motion for default
judgment, plaintiff claims that defendant is in default because
the "time to respond to [the] complaint has expired, and the
defendant has not answered or made a motion, nor has defendant
been granted [an] exten[s]ion" (Affirmation, dated Feb. 5, 2008
at ¶ 3, annexed to Notice of Motion for Default Judgment, dated
Feb. 5, 2008).

      Assuming without deciding that defendant did not timely
answer or move with respect to the Complaint, I conclude it is
appropriate to extend defendant's time to answer or move nunc pro
tunc to the date on which it filed its motion to dismiss.  As
explained below, plaintiff's claims of design patent infringement
are so utterly lacking in merit that affording plaintiff any
relief on this ground would be a gross miscarriage of justice.

      Accordingly, plaintiff's motion for a default judgment
should be denied.

4

B.  Motion to Dismiss
    Pursuant to Rule 12(b)(6)

The standards applicable to a motion to dismiss pursuant to Rule 12(b)(6) are well-settled and require only brief review.

> When deciding a motion to dismiss under Rule 12(b)(6), [the court] must accept as true all well-pleaded factual allegations of the complaint and draw all inferences in favor of the pleader.  See City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493, 106 S.Ct. 2034, 90 L.Ed.2d 480 (1986); Miree v. DeKalb County, 433 U.S. 25, 27 n.2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977) (referring to "well-pleaded allegations"); Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993).  "'[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'"  Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991)).  The Court also may consider "matters of which judicial notice may be taken."  Leonard T. v. Israel Discount Bank of New York, 199 F.3d 99, 107 (2d Cir. 1999) (citing Allen v. WestPoint-Pepperill, Inc., 945 F.2d 40, 44 (2d Cir. 1991)).  In order to avoid dismissal, a plaintiff must do more than plead mere "[c]onclusory allegations or legal conclusions masquerading as factual conclusions."  Gebhardt v. Allspect, Inc., 96 F. Supp.2d 331, 333 (S.D.N.Y. 2000) (quoting 2 James Wm. Moore, Moore's Federal Practice ¶ 12.34[a][b] (3d ed. 1997)).

Hoffenberg v. Bodell, 01 Civ. 9729 (LAP), 2002 WL 31163871 at *3 (S.D.N.Y. Sept. 30, 2002); see also In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007); Johnson & Johnson v. Guidant Corp., 06 Civ. 7685 (GEL), 2007 WL 2456625 at *4 (S.D.N.Y. Aug. 29, 2007).

The Supreme Court in Bell Atlantic Corp. v. Twombly,
--- U.S. ---, ---, 127 S.Ct. 1955, 1965 (2007) recently held
that, in order to survive a motion to dismiss pursuant to Rule
12(b)(6), a plaintiff need not provide detailed factual
allegations, but the factual allegations asserted must be "enough
to raise a right to relief above the speculative level . . . ."
See also Impulse Mktg. Group, Inc. v. Nat'l Small Bus. Alliance,
Inc., 05 Civ. 7776 (KMK), 2007 WL 1701813 at *4 (S.D.N.Y. June
12, 2007).  In doing so, the Court expressly disavowed the oft-
cited pleading standard set forth in Conley v. Gibson, 355 U.S.
41, 45-46 (1957), that "a complaint should not be dismissed for
failure to state a claim unless it appears beyond doubt that the
plaintiff can prove no set of facts in support of his claim which
would entitle him to relief."  Bell Atlantic Corp. v. Twombly,
supra, 127 S.Ct. at 1959-60.

The Second Circuit has interpreted Bell Atlantic Corp.
v. Twombly as "requiring a flexible 'plausibility standard,'
which obliges a pleader to amplify a claim with some factual
allegations in those contexts where such amplification is needed
to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143,
157-58 (2d Cir. 2007)(emphasis in original); see also Bender v.
Gen. Servs. Admin., 05 Civ. 6459 (GEL), 2008 WL 619035 at *2
(S.D.N.Y. Mar. 5, 2008); Wellnx Life Scis. Inc. v. Iovate Health
Scis. Research, Inc., 516 F. Supp.2d 270, 283 (S.D.N.Y. 2007).

Where, as here, a plaintiff proceeds pro se, the
complaint is held to a less stringent standard than those drafted
by attorneys and must be liberally construed to raise the
strongest claims that the allegations suggest.  Haines v. Kerner,
404 U.S. 519, 520 (1972); Pabon v. Wright, 459 F.3d 241, 248 (2d
Cir. 2006); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).
Nevertheless, the "Court [] is not obliged to reconcile
plaintiff's own pleadings that are contradicted by other matter
asserted or relied upon or incorporated by reference by a
plaintiff in drafting the complaint."  Fisk v. Letterman, 401 F.
Supp.2d 362, 368 (S.D.N.Y. 2005); see also Matusovsky v. Merrill
Lynch, 186 F. Supp.2d 397, 399-400 (S.D.N.Y. 2002)(noting that in
analyzing a motion to dismiss pursuant to Rule 12(b)(6) a court
may consider "documents attached to the complaint as
exhibits . . . .  If a plaintiff's allegations are contradicted
by such a document, those allegations are insufficient to defeat
a motion to dismiss")(citations omitted).

Here, copies of the '050, '347, '349, and '184 Patents
and a page from defendant's website, depicting the 6061
telephone, are attached as exhibits to the Amended Complaint (Am.
Compl. at Exs. 1-5, respectively).  I can, therefore, properly
consider these exhibits in connection with this motion to
dismiss, see Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004);
Select Controls v. Am. Elec. Components, Inc., 07 Civ. 1306

7

(DLC), 2008 WL 216612 at *2 (S.D.N.Y. Jan. 22, 2008)(considering patent attached to complaint on motion to dismiss), and I need not accept as true the allegations in the Amended Complaint that are contradicted by these exhibits.  I can also properly consider a picture provided by defendant in support of the motion to dismiss that depicts the front of the 6061 telephone in both the folded and unfolded positions because the design of the 6061 telephone is clearly "integral" to plaintiff's Amended Complaint (see Ex. 5 hereto).  Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 156-57 (2d Cir. 2006); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991).

Plaintiff alleges that, by appropriating the novel aspects of the designs incorporated into his Patents, Nokia's 6061 telephone infringes his Patents (Am. Compl. at ¶ 9). Defendant argues that its 6061 telephone is so different in design from those claimed in the '050, '347, '349, and '184 Patents that plaintiff cannot plausibly allege that the 6061 telephone infringes the designs claimed in his Patents (Nokia Inc.'s Opposition to Tony Colida's Motion for Default Judgment and Memorandum of Law in Support of Its Motion to Dismiss Under Rule 12(b), dated Feb. 8, 2008 at 14-15).  Defendant's argument is persuasive.

8

The standards relevant to analyzing a claim of design patent infringement have been comprehensively set forth by the Honorable Richard J. Holwell, United States District Judge:

> 35 U.S.C. § 171 grants design patents to individuals who invent "any new, original and ornamental design for an article of manufacture." 35 U.S.C. § 171. A design patent encompasses those features that are ornamental, thus excluding any features that are "functional" in use or purpose. Power Controls Corp. v. Hybrinetics, Inc., 806 F.2d 234, 238 (Fed. Cir. 1986). The scope of the claim must therefore be limited in order to separate and identify the non-functional aspects of the design as shown in the patent. Lee v. Dayton-Hudson Corp., 838 F.2d 1186, 1188 (Fed. Cir. 1988).

> Determining whether a design patent has been infringed requires "(1) construction of the claim, and (2) comparison of the construed claim to the accused product." Contessa Food Products v. Conagra, Inc., 282 F.3d 1370, 1376 (Fed. Cir. 2002) (citing Elmer v. ICC Fabricating, Inc., 67 F.3d 1571, 1577 (Fed. Cir. 1995); Omega Engineering, Inc. v. Raytek Corp., 334 F.3d 1314, 1320 (Fed. Cir. 2003)). When construing a design patent claim, the "scope of the claimed design encompasses its visual appearance as a whole, and in particular, the visual impression it creates." Contessa, 282 F.3d at 1376 (internal citations and quotations omitted). The second step, comparison to the accused product, "includes two distinct tests, both of which must be satisfied in order to find infringement: (a) the 'ordinary observer' test, and (b) the 'point of novelty' test." Id. at 1377 (internal citations omitted).

> The "ordinary observer" test has been articulated as follows:

> > if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one, supposing it to be the other, the first one patented is infringed by the other.

<u>Gorham Mfg. Co. v. White</u>, 81 U.S. 511, 528 (1871).

> While the patented and accused designs need not be identical to find design patent infringement, it is the "appearance of the design as a whole which is controlling." <u>Oddzon Products, Inc. v. Just Toys, Inc.</u>, 122 F.3d 1396, 1405 (Fed. Cir. 1996). The "point of novelty" test, a legally distinct analysis from the "ordinary observer" test, requires "proof that the accused design appropriates the novelty which distinguishes the patented design from the prior art." <u>Contessa</u>, 282 F.3d at 1377. However, if the overall appearances of the designs under the "ordinary observer" test are dissimilar, the accused product does not infringe, and the inquiry ends. <u>Oddzon Products, Inc.</u>, 122 F.3d at 1405; <u>Keystone Retaining Wall Sys., Inc. v. Westrock, Inc.</u>, 997 F.2d 1444, 1451 (Fed. Cir. 1993).

<u>Colida v. Sony Corp. of Am.</u>, 04 Civ. 2093 (RJH), 2005 WL 267231 at *2 (S.D.N.Y. Feb. 3, 2005).

### 1. <u>Claim Construction</u>

As noted above, the first step in determining whether Nokia's 6061 telephone infringes plaintiff's design Patents requires that I construe plaintiff's Patents. <u>Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.</u>, 501 F.3d 1314, 1319 (Fed. Cir. 2007). "The process of construing the claims of a design patent 'must be adapted to the practice that a patented design is claimed as shown in its drawing. There is usually no description of the design in words[.]'" <u>Etna Prods. Co. v. Mktg. Group, Inc.</u>, 03 Civ. 3805 (SAS), 2004 WL 1769794 at *8 (S.D.N.Y. Aug. 6, 2004), <u>quoting</u> <u>Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.</u>, 162 F.3d 1113, 1116 (Fed. Cir. 1998); <u>see also In re</u>

Mann, 861 F.2d 1581, 1582 (Fed. Cir. 1988)(noting that the "claim[s] at bar, as in all design cases, [are] limited to what is shown in the application drawings").  Thus, a "proper construction of plaintiff's claimed design[s] focuses on the visual impression [they] create[] -- e.g., [their] 'overall ornamental visual impression' -- rather than on the 'broader general design concept' of a flip-phone." Colida v. NEC USA, Inc., 03 Civ. 9025 (RJH)(JCF), 2005 WL 267417 at *3 (S.D.N.Y. Feb. 3, 2005), quoting OddzOn Prods., Inc. v. Just Toys, Inc., 122 F.3d 1396, 1405 (Fed. Cir. 1997).

    With these principles in mind, I construe seriatim the '050, '347, '349, and '184 Patents.

### a.  The '050 Patent[3]

    The '050 Patent discloses a curved folding, or "flip," telephone.  Extending from the top of the telephone is a long curved antenna that is topped with a small sphere.  A circular earpiece is located at the top of the front of the telephone.  A rectangular screen with curved corners is located directly below this.  As illustrated in figure 2's side view, the battery pack, which protrudes from the bottom-section of the rear of the telephone, is as wide as the body of the telephone itself.  As

---

    [3]Plaintiff unsuccessfully asserted a design patent infringement claim with respect to his '050 Patent in Colida v. Ericsson, Inc., 93 Fed. Appx. 220 (Fed. Cir. 2004).

shown in figure 1, a thin portion of approximately half the length of the main body of the telephone flips open on a hinge located at the bottom-front of the telephone.  When flipped open and viewed from the side, the telephone's profile forms a C-shape, as depicted in figure 2.  When closed, the hinged portion is flush with the main body of the telephone.  The rear of the telephone is featureless, as demonstrated in figure 4.

> b.  The '347 Patent[4]

Because plaintiff has filed numerous actions alleging infringement of the '347 Patent, many courts have previously construed this patent.  In Colida v. NEC USA, Inc., supra, 2005 WL 267417, Judge Holwell provided a succinct construction of the '347 Patent, which I adopt here:

> The '347 patent displays a flip-phone design that has been roughly described as a "clam-shell" or "whale's mouth" when closed and viewed from the side angle.  As Figure 1 demonstrates, each half of the telephone is substantially thicker at the hinge portion

---

[4]Other cases in which plaintiff has unsuccessfully asserted infringement of his '347 Patent include:  Kyocera Wireless Co. v. President Elecs., Ltd., No. 06-1131, 2006 WL 1153583 (Fed. Cir. May 2, 2006); Colida v. Sharp Elecs. Corp., 125 Fed. Appx. 993 (Fed. Cir. 2005); Colida v. Qualcomm Inc., 128 Fed. Appx. 765 (Fed. Cir. 2005); Colida v. Sanyo N. Am. Corp., 118 Fed. Appx. 501 (Fed. Cir. 2004); Kyocera Wireless Corp. v. President Elecs., Ltd., 116 Fed. Appx. 282 (Fed. Cir. 2004); Colida v. Matsushita Elec. Corp. for Am., 114 Fed. Appx. 383 (Fed. Cir. 2004); Colida v. Ericsson, Inc., supra, 93 Fed. Appx. 220; Colida v. Sony Corp., 70 F.3d 130 (Fed. Cir. 1995); Colida v. NEC USA, Inc., supra, 2005 WL 267417; Colida v. Sony Corp. of Am., supra, 2005 WL 267231.

and gradually curves inward toward the distal ends. The earpiece is formed by an oval depression containing eight small holes across a raised section in the upper half of the telephone.  The recessed portion of the upper half includes a rectangular-shaped display deeply recessed between protruding sidewalls.

The bottom half contains a keypad containing 21 keys of same size and shape deeply recessed between two S-shaped walls.  There are three small holes below the keypad.  Figures 3, 5 and 7 illustrate the rear of the telephone, which appears to be featureless and adopts a rectangular periphery on each half.

Colida v. NEC USA, Inc., supra, 2005 WL 267417 at *3 (internal citations omitted).

> c.   The '349 Patent[5]

I also adopt Judge Holwell's construction of the '349 Patent from the same case:

As diagrammed in Figures 1, 3 and 6, the '349 patent is a telephone with a large, cylindrical hinge and an upper half which is considerably longer than the bottom half when closed.  The upper half consists of 'protruding sidewalls extending from the large hinge to the inwardly slanting end,' as well as a recessed keypad comprised of 15 oval-shaped keys.  An oval shaped earpiece depression is provided at the top of the inwardly slanting end of the upper half.

_____

[5]Other cases in which plaintiff has unsuccessfully asserted infringement of his '349 Patent include:  Colida v. Sharp Elecs. Corp., supra, 125 Fed. Appx. 993; Colida v. Qualcomm Inc., supra, 128 Fed. Appx. 765; Colida v. Sanyo N. Am. Corp., supra, 118 Fed. Appx. 501; Colida v. Sanyo N. Am. Corp., No. 04-1287, 2004 WL 2853034 (Fed. Cir. Dec. 2, 2004); Kyocera Wireless Corp. v. President Elecs., Ltd., supra, 116 Fed. Appx. 282; Colida v. Matsushita Elec. Corp. for Am., supra, 114 Fed. Appx. 383; Colida v. NEC USA, Inc., supra, 2005 WL 267417; Colida v. Sony Corp. of Am., supra, 2005 WL 267231.

> The bottom half is generally rectangular, with an
> oval shaped microphone depression.  The rear of the
> telephone, shown in Figure 2, is also rectangular in
> shape and featureless.

Colida v. NEC USA, Inc., supra, 2005 WL 267417 at *3 (internal
citations omitted).

### d.  The '184 Patent[6]

As shown in figures 1 and 5, the '184 Patent depicts a
curved, rigid, non-foldable cellular telephone.  The earpiece
consists of twenty-one small holes arranged in seven columns and
three rows.  The keypad is depressed and consists of eighteen
circular buttons arranged in three columns and six rows.  Also
within this depression and located above the keypad is a
rectangular screen with rounded corners.  At the bottom of the
front of the telephone is a microphone with five holes arranged
in a horizontal line.  As illustrated in figure 4, running from
the top to the bottom down the centerline of the front of the
telephone but excluding the depressed area with the screen and
keypad is a slight half-elliptical depression.  The middle three
columns of the holes comprising the earpiece and the middle three

---

[6]Other cases in which plaintiff has unsuccessfully asserted
infringement of his '184 Patent include:  Kyocera Wireless Corp.
v. President Elecs., Ltd., supra, 116 Fed. Appx. 282; Colida v.
Sony Corp. of Am., 152 F.3d 940 (Fed. Cir. 1998)(per curiam);
Colida v. Sony Corp., 93-CV-573 (CGC), 1994 WL 806088 (N.D.N.Y.
Dec. 16, 1994), aff'd in part, vacated in part, and remanded 70
F.3d 130 (Fed. Cir. 1995)(affirming defendant's summary judgment
motion on issue of non-infringement).

holes of the microphone sit within this half-elliptical depression.  As figure 3 demonstrates, the rear of the telephone is featureless.

      2.  Comparison of the Patents
         to Nokia's 6061 Telephone

      The next step in determining whether the accused telephone infringes plaintiff's design Patents is to compare Nokia's 6061 telephone to the '050, '347, '349, and '184 Patents, as construed.  See Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc., supra, 501 F.3d at 1320.

        a.  The '050 Patent and
           Nokia's 6061 Telephone

      When the ornamental design features illustrated in the figures of the '050 Patent are viewed in the aggregate, the visual impression created by the design disclosed in the '050 Patent is vastly dissimilar from the overall appearance of the 6061 telephone (compare Am. Compl. at Ex. 4, with Am. Compl. at Ex. 5).  The following table outlines some of the more obvious design differences:

| The '050 Patent | Nokia's 6061 Telephone |
|---|---|
| Long, slender antenna with small sphere at the end. Antenna extends from top-left of the telephone. | Short, thick antenna extending from top-right of the bottom section of the telephone. |

| | |
|---|---|
| Battery pack "piggy-backs" on body of telephone, creating large protrusion on profile view of the telephone. | Battery pack is housed entirely within body of telephone, leaving a smooth, linear profile of the telephone. |
| Hinge located at bottom of the telephone when viewed from the front. | Hinge located at top of the telephone when viewed from the front. |
| Earpiece is circular with width that is more than one-half width of the telephone. | Earpiece is rectangular with rounded corners with width of approximately one-third the width of the telephone. |
| Small screen similar to that on hand-held calculator, occupying substantially less than one-half of the upper section of the telephone. | Large screen covering more than one-half of the upper section of the telephone. |
| No keypad. | Keypad of twelve buttons with numbers and symbols arranged in a matrix of three columns and four rows. In addition, the upper portion of the bottom section contains an approximately rectangular, multi-function key-pad, within which is set a second, square, multi-function key pad, consisting of two concentric squares. |

The only similarity between the design disclosed in plaintiff's '050 Patent and Nokia's 6061 telephone is that both designs are for folding cellular telephones. However, "[a] design patent protects the non-functional aspects of an ornamental design as seen as a whole and as shown in the patent." KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc., 997 F.2d 1444, 1450 (Fed. Cir. 1993); see also OddzOn Prods., Inc. v. Just

16

Toys, Inc., supra, 122 F.3d at 1405 ("A design patent only protects the novel, ornamental features of the patented design."). "An aspect is functional 'if it is essential to the use or purpose of the article or if it affects the cost or quality of the article.'" Amini Innovation Corp. v. Anthony Cal., Inc., 439 F.3d 1365, 1371 (Fed. Cir. 2006), quoting Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 851 n.10 (1982). The ability of the design disclosed in the '050 Patent to fold is clearly a functional feature and is not, therefore, within the scope of plaintiff's '050 Patent.

Based on the foregoing dissimilarities, "it cannot be said by any measure that the resemblance [between the '050 Patent and Nokia's 6061 telephone] 'is such as to deceive [an ordinary] observer, inducing him to purchase one supposing it to be the other.'" Colida v. NEC USA, Inc., supra, 2005 WL 267417 at *4, quoting Gorham Co. v. White, 81 U.S. (14 Wall.) 511, 528 (1871); see also Colida v. Sony Corp. of Am., supra, 2005 WL 267231 at *2. Because plaintiff's infringement claim with respect to his '050 Patent clearly fails under the "ordinary observer" test, I need not reach the "point of novelty" test. See Keystone Retaining Wall Sys., Inc. v. Westrock, Inc., supra, 997 F.2d at 1451.

17

b.  The '347 Patent and
Nokia's 6061 Telephone

As with the '050 Patent, upon viewing the ornamental design features depicted in the figures of the '347 Patent in the aggregate, the visual impression created by the '347 Patent is remarkably and substantially dissimilar from the overall appearance of the 6061 telephone (compare Am. Compl. at Ex. 2, with Am. Compl. at Ex. 5).  The following table outlines some of the more obvious differences in the two designs:

| The '347 Patent | Nokia's 6061 Telephone |
|---|---|
| Whale's mouth or clam's shell appearance when closed. | Featureless, linear profile when closed. |
| Substantially thicker at the hinge portion and gradually curves inward toward the distal ends. | Each section is of relatively consistent thickness; only the bottom section is thicker at the hinge/antenna end. |
| Both halves have a S-shaped or sinuous curved design. | Both halves have a smooth, straight linear design. |
| Hinge is visible from the right and left-side elevation views, as well as the bottom plan view. | Hinge is not visible from either the right or left-side elevation views or the bottom plan view. |
| Deeply recessed display in the upper section of the telephone and a deeply recessed keypad in the bottom section. | Both the display in the upper section of the telephone and the keypad in the bottom section are flush with surface. |
| Small screen, similar to that on hand-held calculator, occupying substantially less than one half of the upper section of the telephone. | Large screen covering more than one half of the upper section of the telephone. |

| | |
|---|---|
| The entire bottom section of the telephone contains a keypad with twenty-one, oval-shaped keys of the same size. | The lower portion of the bottom section of the telephone contains a keypad with twelve quadrilateral keys of approximately the same size; keys are in at least five slightly different shapes.  In addition, the upper portion of the bottom section contains an approximately rectangular, multi-function key-pad, within which is set a second, square, multi-function key pad, consisting of two concentric squares. |
| The earpiece is comprised of an oval depression containing eight small rectangular holes. The earpiece occupies approximately 15% of the upper section of the telephone. | The earpiece is comprised of a rectangle containing a single recessed rectangular hole. The earpiece occupies less than 5% of the upper section of the telephone. |
| There are three small, rectangular holes below the keypad. | No holes below the keypad. One rectangular slit is located near the antenna on the top side of the bottom section of the telephone. |
| No visible antenna. | Non-retractable antenna protruding from the top side of the bottom section of the telephone. |
| Front and rear views of telephone in folded configuration are featureless. | The front of the upper section of the telephone includes a narrow rectangular depression. |

Again, the ability of the design disclosed in the '347 Patent to fold is clearly a functional feature of both designs and is not, therefore, within the scope of plaintiff's '347 Patent.

19

Based on the foregoing dissimilarities, "it cannot be said by any measure that the resemblance [between the '347 Patent and Nokia's 6061 telephone] 'is such as to deceive [an ordinary] observer, inducing him to purchase one supposing it to be the other.'" Colida v. NEC USA, Inc., supra, 2005 WL 267417 at *4, quoting Gorham Co. v. White, supra, 81 U.S. at 528; see also Colida v. Sony Corp. of Am., supra, 2005 WL 267231 at *2.  Again, since plaintiff's infringement claim with respect to his '347 Patent clearly fails under the "ordinary observer" test, I need not reach the "point of novelty" test.  See Keystone Retaining Wall Sys., Inc. v. Westrock, Inc., supra, 997 F.2d at 1451.

c.  The '349 Patent and
Nokia's 6061 Telephone

Upon comparing the ornamental design features depicted in the figures of the '349 Patent with the 6061 telephone, I find that the visual impression created by the '349 Patent is strikingly dissimilar from the overall appearance of the 6061 telephone (compare Am. Compl. at Ex. 3, with Am. Compl. at Ex. 5).  Some of the more apparent design differences include:

| The '349 Patent | Nokia's 6061 Telephone |
|---|---|
| No visible antenna. | Short, thick antenna extending from top-right of the bottom section of the telephone. |

20

| | |
|---|---|
| Top-section of the telephone is longer than bottom section; top section itself is curved at an obtuse angle. | Top-section and bottom-section are of equal length; top-section is straight. |
| Sidewalls protruding from face of upper section of the telephone. | No sidewalls. |
| Hinge is visible from the right and left-side elevation views, as well as the bottom plan view. | Hinge is not visible from either the right or left-side elevation views or the bottom view. |
| Earpiece is oval-shaped and is approximately one-fifth the width of the telephone. | Earpiece is rectangular with rounded corners and is approximately one-third the width of the telephone. |
| Keypad of fifteen oval-shaped buttons arranged in a matrix of three columns and five rows.  Keypad is on top-section of the telephone. | Keypad of twelve buttons with numbers and symbols arranged in a matrix of three columns and four rows.  In addition, the upper portion of the bottom contains an approximately rectangular, multi-function key-pad, within which is set a second, square, multi-function key pad, consisting of two concentric squares.  Keypad is on bottom-section of the telephone. |

As with plaintiff's '050 and '347 Patents, the ability of the design disclosed in the '349 Patent to fold is clearly a functional feature and is not, therefore, within the scope of plaintiff's '349 Patent.

Based on the foregoing dissimilarities, "it cannot be said by any measure that the resemblance [between the '349 Patent and Nokia's 6061 telephone] 'is such as to deceive [an ordinary] observer, inducing him to purchase one supposing it to be the

21

other.'"  <u>Colida v. NEC USA, Inc.</u>, <u>supra</u>, 2005 WL 267417 at *4,
<u>quoting</u> <u>Gorham Co. v. White</u>, <u>supra</u>, 81 U.S. at 528; <u>see</u> <u>also</u>
<u>Colida v. Sony Corp. of Am.</u>, <u>supra</u>, 2005 WL 267231 at *2.  Again,
I need not reach the "point of novelty" test because plaintiff's
infringement claim with respect to the '349 Patent clearly fails
under the "ordinary observer" test.  <u>See</u> <u>Keystone Retaining Wall</u>
<u>Sys., Inc. v. Westrock, Inc.</u>, <u>supra</u>, 997 F.2d at 1451.

> d.  The '184 Patent and
> <u>Nokia's 6061 Telephone</u>

As with plaintiff's first three Patents, the overall
visual impression created by the design claimed in the '184
Patent is strikingly dissimilar from the overall appearance of
the 6061 telephone (<u>compare</u> Am. Compl. at Ex. 3, <u>with</u> Am. Compl.
at Ex. 5).  The following table outlines some of the more obvious
design differences:

| The '184 Patent | Nokia's 6061 Telephone |
|---|---|
| No hinge. | Hinge located on top-front of the telephone, separating telephone into two halves. |
| No visible antenna. | Short, thick antenna extending from top-right of the bottom section of the telephone. |
| Curved profile. | Linear profile. |
| The earpiece consists of twenty-one small holes arranged in seven columns and three rows. | Earpiece is rectangular with rounded corners and is approximately one-third the width of the telephone. |

| | |
|---|---|
| Small screen, similar to that on hand-held calculator, occupying substantially less than one half of the telephone.  Screen recessed. | Large screen covering more than one-half of the upper section of the telephone. Screen flush with face of the telephone. |
| Keypad of eighteen circular buttons arranged in matrix of three columns and six rows. Keypad recessed. | Keypad of twelve buttons with numbers and symbols arranged in a matrix of three columns and four rows.  In addition, the upper portion of the bottom contains an approximately rectangular, multi-function key-pad, within which is set a second, square, multi-function key pad, consisting of two concentric squares.  Keypad flush with face of the telephone. |
| Microphone at bottom of the telephone with five holes arranged in a horizontal line. | No visible holes for microphone on front of the telephone. |

Based on the foregoing dissimilarities, "it cannot be said by any measure that the resemblance [between the '184 Patent and Nokia's 6061 telephone] 'is such as to deceive [an ordinary] observer, inducing him to purchase one supposing it to be the other.'"  Colida v. NEC USA, Inc., supra, 2005 WL 267417 at *4, quoting Gorham Co. v. White, supra, 81 U.S. at 528; see also Colida v. Sony Corp. of Am., supra, 2005 WL 267231 at *2. Furthermore, since plaintiff's infringement claim with respect to his '184 Patent clearly fails under the "ordinary observer" test, I need not reach the "point of novelty" test.  See Keystone Retaining Wall Sys., Inc. v. Westrock, Inc., supra, 997 F.2d at 1451.

23

In sum, the critical issue in this case is the similarity, or lack thereof, of Nokia's 6061 telephone to the designs claimed in the '050, '347, '349, and '184 Patents.  The analyses set forth above demonstrates that the dissimilarities far exceed the similarities when comparing each of plaintiff's four Patents, as construed, to defendant's 6061 telephone, and no amount of extrinsic evidence can change that.  Therefore, I find that plaintiff woefully fails to allege facts sufficient to render his claims of design patent infringement "plausible." Bell Atlantic Corp. v. Twombly, supra, --- U.S. at ---, 127 S.Ct. at 1965; Iqbal v. Hasty, supra, 490 F.3d at 157-58.

Accordingly, I respectfully recommend that defendant's motion to dismiss should be granted.

    C.  Motion for Sanctions
        Pursuant to Rule 11

Defendant next argues that plaintiff's assertion of its infringement claims with respect to the designs disclosed in the '184, '347, and '349 Patents[7] warrant the imposition of sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure (Nokia Inc.'s Memorandum of Law in Support of its Motion for

_____

[7]Defendant does not move for Rule 11 sanctions with respect to the claim asserting infringement of the design disclosed in the '050 Patent.

Sanctions Under Rule 11, dated Mar. 7, 2008 ("Def. Rule 11 Mem.")
at 4-15).

        As a preliminary matter, I note that defendant has
satisfied the procedural requirements of Rule 11(c)(2).  <u>See</u>
<u>Pannonia Farms, Inc. v. USA Cable</u>, 426 F.3d 650, 652 (2d Cir.
2005)(describing the "procedural protections that must accompany
Rule 11 sanctions").  First, defendant's motion for sanctions was
made separately from its other motions (<u>see</u> Docket Item 17).
Second, defendant more than adequately complied with the "safe-
harbor" provision of Rule 11, which requires parties to serve the
motion 21 days prior to filing it with the Court to allow the
non-moving party an opportunity to withdraw the challenged
pleading or motion.  Indeed, on February 11, 2008, defendant sent
a letter to plaintiff notifying him that, "[i]f you do not
withdraw the complaint, Nokia will prepare and serve on you a
motion for sanctions under Rule 11" (Letter to Plaintiff, dated
Feb. 11, 2008, annexed as Ex. E to Def. Rule 11 Mem.).  <u>See</u>
Fed.R.Civ.P. 11 advisory committee's notes (1993 amendments)
(contemplating that "counsel should be expected to give informal
notice to the other party, whether in person or by a telephone
call or letter, of a potential violation before proceeding to
prepare and serve a Rule 11 motion").  In response, plaintiff
refused to withdraw his Amended Complaint and, instead, demanded
"one hundred million" to settle his claims (Letter to Defendant,

dated Feb. 19, 2008, annexed as Ex. F to Def. Rule 11 Mem.).  On
February 26, 2008, defendant served its motion for sanctions and
memorandum of law in support thereof on plaintiff.  More than 21
days later, on April 1, 2008, Nokia filed its motion for
sanctions with the Court (Docket Item 17).

   Rule 11(c) permits a Court to impose sanctions for
violations of Rule 11(b).  Fed.R.Civ.P. 11(c)(1); <u>Perez v. Posse
Comitatus</u>, 373 F.3d 321, 325 (2d Cir. 2004); <u>Murawski v. Pataki</u>,
514 F. Supp.2d 577, 590 (S.D.N.Y. 2007)("[T]he decision to impose
Rule 11 sanctions rests in the sound discretion of the court.").
Rule 11(b)(2) provides, in pertinent part, that:

> By presenting to the court a pleading, written motion,
> or other paper -- whether by signing, filing,
> submitting, or later advocating it -- an attorney or
> unrepresented party certifies that to the best of the
> person's knowledge, information, and belief, formed
> after an inquiry reasonable under the circumstances:
>
> . . . .
>
> (2) the claims . . . are warranted by existing law or
> by a non-frivolous argument for extending, modifying,
> or reversing existing law or for establishing new
> law[.]

Fed.R.Civ.P. 11(b)(2).  "In evaluating whether the signer of a
filing has violated Rule 11, the district court applies an
objective standard of reasonableness[.]" <u>MacDraw, Inc. v. CIT
Group Equip. Fin., Inc.</u>, 73 F.3d 1253, 1257 (2d Cir. 1996).  A
party advances an objectively unreasonable claim if, at the time
the party signed the pleading, "it is patently clear that [the]

claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands[.]" Eastway Const. Corp. v. City of New York, 762 F.2d 243, 254 (2d Cir. 1985); see also Baker v. Dorfman, 99 Civ. 9385 (DLC), 2000 WL 1201467 at *4 (S.D.N.Y. Aug. 22, 2000)("frivolous" legal arguments violate Rule 11(b)(2)).  "In the context of patent infringement actions, [the Court of Appeals for the Federal Circuit has] interpreted Rule 11 to require, at a minimum, that an attorney interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement." Q-Pharma, Inc. v. Andrew Jergens Co., 360 F.3d 1295, 1300-01 (Fed. Cir. 2004); accord Antonious v. Spalding & Evenflo Cos., 275 F.3d 1066, 1072 (Fed. Cir. 2002).

Moreover, "[i]t is well established that Rule 11 applies to pro se litigants." Fariello v. Campbell, 860 F. Supp. 54, 71 (E.D.N.Y. 1994).  Proceeding pro se "does not shield [a party] from Rule 11 sanctions because one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." Malley v. New York City Bd. of Educ., 207 F.Supp.2d 256, 259 (S.D.N.Y. 2002)(internal quotation marks omitted). While a court may consider the "special circumstances of litigants who are untutored in the law," Maduakolam v. Columbia

27

Univ., 866 F.2d 53, 56 (2d Cir. 1989), a court may treat pro se
litigants who have some experience with the legal system less
leniently than those pro se litigants completely unfamiliar with
the law.  Kilkenney v. Greenberg Traurig, LLP, 05 Civ. 6578
(NRB), 2006 WL 1096830 at *5 (S.D.N.Y. Apr. 26, 2006)("[T]he
application of Rule 11 may be determined on a sliding scale
according to the litigant's level of sophistication.")(internal
quotation marks omitted).  Lastly, courts accord significant
weight to the fact that a pro se litigant has been previously
warned by the court that he has treaded close to violating Rule
11.  Horton v. Trans World Airlines Corp., 169 F.R.D. 11, 16
(E.D.N.Y. 1996).

        Applying these applicable legal principles, I conclude
that it was objectively unreasonable for plaintiff,
notwithstanding his pro se status, to assert his design patent
infringement claims against defendant.  First, plaintiff has been
previously warned about the possibility of Rule 11 sanctions with
respect to asserting patent infringement claims against Nokia.
In Colida v. Nokia Am. Corp., 05 Civ. 9920 (KMW)(HBP) (S.D.N.Y.
Feb. 16, 2007)(unreported opinion)(hereinafter Colida I), a case
remarkably similar to the instant one, plaintiff asserted a claim
of design patent infringement on his '347 Patent against
defendant.  In granting defendant's motion to dismiss but denying
Rule 11 sanctions, the Honorable Kimba M. Wood, Chief Judge,

United States District Court for the Southern District of New York, "strongly caution[ed] Plaintiff to consider the provisions of Rule 11 before filing any future lawsuits." <u>Colida I</u>, <u>supra</u>, at 6.  Despite this express warning, plaintiff filed the instant action against the same defendant alleging infringement of his Patents.

Second, although plaintiff is proceeding <u>pro</u> <u>se</u>, he is familiar with prosecuting design patent infringement claims in the federal courts.  Plaintiff has commenced at least five actions for infringement of his '184 Patent,[8] at least twenty actions for infringement of his '347 Patent, and at least thirteen actions for infringement of his '349 Patent (Patent Litigation History, dated Feb. 26, 2008 ("Litig. History") annexed as Ex. A to Def. Rule 11 Mem.).  Given this litigation history, plaintiff need not be afforded as much leeway as a completely inexperienced <u>pro</u> <u>se</u> plaintiff for purposes of determining whether he has violated Rule 11.  <u>Muniz v. Goord</u>, 04-CV-0479 (TJM), 2007 WL 2027912 at *6 n.30 (N.D.N.Y. July 11, 2007).

_____

[8]<u>Kyocera Wireless Corp. v. President Elecs., Ltd.</u>, <u>supra</u>, 116 Fed. Appx. 282; <u>Colida v. Sony Corp. of Am.</u>, <u>supra</u>, 152 F.3d 940; <u>Colida v. Panasonic Corp. of N. Am.</u>, 05 Civ. 5791 (JSR)(JC), 2005 WL 3046298 (S.D.N.Y. Nov. 10, 2005); <u>Colida v. Kyocera Wireless Corp.</u>, No. 02 C 7348 (RWG), 2003 WL 1741396 (N.D. Ill. Apr. 01, 2003); <u>Colida v. Sony Corp.</u>, <u>supra</u>, 1994 WL 806088, <u>aff'd in part</u>, <u>rev'd in part on other grounds</u>, 70 F.3d 130.

Third, it is "patently clear" that plaintiff's claims had "absolutely no chance of success under the existing precedents[.]" Eastway Const. Corp. v. City of New York, supra, 762 F.2d at 254. "The Federal Circuit has held that design patents have a narrow scope, limited to what is shown in the drawings accompanying the patent application." Nat'l Diamond Syndicate, Inc. v. Flanders Diamond USA, Inc., 264 F. Supp.2d 631, 639 (N.D. Ill. 2003). The case law is equally well-established that "[t]he ordinary observer test requires that an average person, not an expert, compare the patent drawings to the allegedly infringing product, and any significant differences in configuration and general appearance, as they present themselves to the average buyer of the article on inspection, will be sufficient to avoid infringement." Cotapaxi Custom Design & Mfg., LLC v. Corporate Edge, Inc., No. 06-5183 (JAG), 2007 WL 2908265 at *3 (D.N.J. Oct. 1, 2007)(internal quotation marks omitted).

Here, an objective assessment of plaintiff's claims for design patent infringement would not have required an understanding of subtle points of law or the application of esoteric legal principles to certain facts. Instead, an assessment under the ordinary observer test would have merely demanded a visual comparison of the overall ornamental impressions created by the '184, '347, '349 Patents and the Nokia

30

6061 telephone.  Plaintiff's prior unsuccessful litigation of his
'347 Patent against Nokia in Colida I underscores the futile
nature of his instant claims.  The accused telephone in Colida I
is nearly identical to the accused telephone in this case
(compare Ex. 6 hereto with Ex. 5 hereto).  Upon an objective
comparison of the '184, '347, and '349 Patents, on the one hand,
and the Nokia 6061, on the other, I conclude that the visual
differences between these Patents and the accused telephone are
so blatantly obvious that plaintiff's instant claims for design
patent infringement were not "warranted by existing law or a good
faith argument for the extension, modification or reversal of
existing law."  Eastway Const. Corp. v. City of New York, supra,
762 F.2d at 254.  In short, plaintiff's infringement claims are
patently frivolous.

    Having concluded that plaintiff has violated Rule
11(b)(2) by asserting frivolous infringement claims, I turn to
the question of whether sanctions should be imposed.  "[I]f a
court has concluded that Rule 11(b) has been violated, an award
of sanctions is not mandatory."  Capital Bridge Co. v. IVL Techs.
Ltd., 04 Civ. 4002 (KMK), 2007 WL 3168327 at *9 (S.D.N.Y. Oct.
26, 2007).  Instead, a court retains the discretion to impose
sanctions "suffic[ient] to deter repetition of the conduct[.]"
Fed.R.Civ.P. 11(c)(4); see also Margo v. Weiss, 213 F.3d 55, 64
(2d Cir. 2000); Neshewat v. Salem, 365 F. Supp.2d 508, 528

31

(S.D.N.Y. 2005)(Rule 11 sanctions "must be tailored to the particular facts and circumstances of the specific case[.]"). Defendant contends that the Court should impose both monetary and injunctive sanctions on plaintiff (Def. Rule 11 Mem. at 10, 14). Although I agree sanctions are warranted in this case, I disagree with defendant as to the nature of the appropriate sanctions.

       With respect to monetary sanctions, defendant asserts that "the Court should award Nokia its reasonable attorneys fees and costs incurred in connection with its defense of this action" (Def. Rule 11 Mem. at 10). I decline to recommend that monetary sanctions be imposed because I believe it unlikely that such sanctions will deter plaintiff from continuing to assert frivolous claims of design patent infringement. See Neshewat v. Salem, supra, 365 F. Supp.2d at 528 ("Deterrence is frequently stated to be the chief goal of Rule 11[.]")(internal quotation marks omitted). Defendant itself acknowledges that monetary sanctions have not deterred plaintiff from asserting claims based on the purported infringement of his '347, and '349 Patents (Def. Rule 11 Mem. at 11-12). For example, despite the Court of Appeals for the Federal Circuit twice imposing monetary sanctions on plaintiff for frivolous appeals, Colida v. Sharp Elecs. Corp., supra, 125 Fed. Appx. at 996 (ordering plaintiff to pay adversary's costs); Colida v. Sanyo N. Am. Corp., supra, 2004 WL 2853034 at *2 (ordering plaintiff to pay double costs), plaintiff

subsequently filed at least nine other actions in federal
district courts around the country in addition to the instant
case (see Litig. History at 1-2).  The fact that plaintiff is
proceeding in forma pauperis further weighs in favor of declining
to award monetary sanctions because plaintiff probably does not
have the financial means to pay such sanctions.  Lacy v.
Principi, 317 F. Supp.2d 444, 449 (S.D.N.Y. 2004)("Because
plaintiff filed this lawsuit in forma pauperis, we conclude that
monetary sanctions against him would be ineffective.").

        With respect to injunctive sanctions, defendant urges
the Court to enter an Order "enjoin[ing] [plaintiff] from
instituting any new action, in any court, against Nokia or its
customers, based upon the acts complained of in this litigation"
(Def. Rule 11 Mem. at 18)(proposed Order).  District courts
possess the authority to issue injunctive sanctions under Rule
11.  In re Martin-Trigona, 737 F.2d 1254, 1261-62 (2d Cir. 1984);
Vasile v. Dean Witter Reynolds Inc., 20 F. Supp.2d 465, 505
(E.D.N.Y. 1998).  Indeed, the Court of Appeals for the Second
Circuit has declared that "[f]ederal courts have . . . the
constitutional obligation to protect their jurisdiction from
conduct which impairs their ability to carry out Article III
functions."  In re Martin-Trigona, supra, 737 F.2d at 1261; see
also Lacy v. Principi, supra, 317 F. Supp.2d at 449 (court has "a
constitutional duty to enjoin the filing of frivolous lawsuits in

order to preserve judicial resources when the plaintiff is likely
to file more suits in the future and non-injunctive relief would
be ineffective."). Relying on this authority under Rule 11,
courts in this District have issued injunctions requiring
plaintiffs to seek leave of court before filing new actions.
E.g., <u>Satterfield v. Pfizer, Inc.</u>, 04 Civ. 3782 (KMW)(GWG), 2005
WL 1765708 at *2 (S.D.N.Y. July 18, 2005); <u>Sathianathan v. Smith
Barney, Inc.</u>, 04 Civ. 7122 (DAB)(FM), 2007 WL 576097 at *8-*9
(S.D.N.Y. Feb. 21, 2007). Such an injunction is appropriate
here.

        However, before a court issues an anti-filing
injunction against a litigant, the litigant must be provided with
notice and an opportunity to be heard. <u>Moates v. Barkley</u>, 147
F.3d 207, 208 (2d Cir. 1998). Here, defendant served its motion
for sanctions and memorandum of law in support thereof on
plaintiff on February 26, 2008. This memorandum of law, as noted
above, expressly argues for the imposition of an anti-filing
injunction. On April 3, 2008, plaintiff responded to the
sanctions motion, arguing that sanctions should not be imposed
(Affirmation of Plaintiff in Opposition to Defendant's Motion for
Sanctions, dated Apr. 3, 2008). Thus, plaintiff has received
notice of defendant's application for an anti-filing injunction
and has been afforded an opportunity to respond. <u>Baker v. City
of New York</u>, 05 Civ. 664 (NRB), 2005 WL 1018193 at *1 (S.D.N.Y.

May 2, 2005)("As defendants' motion clearly advised plaintiff
that his future access to the courts was at issue and plaintiff
opposed the requested injunction in his opposition papers, the
requirement of notice and opportunity to respond has been met.");
O'Diah v. New York City, 02 Civ. 274 (DLC), 2002 WL 1941179 at
*21 (S.D.N.Y. Aug. 21, 2002)(same).

      The Court of Appeals for the Second Circuit has
identified the following factors as being relevant to resolving
an application for an anti-filing injunction:

> (1) the litigant's history of litigation and in
> particular whether it entailed vexatious, harassing or
> duplicative lawsuits; (2) the litigant's motive in
> pursuing the litigation, e.g., does the litigant have
> an objective good faith expectation of prevailing?; (3)
> whether the litigant is represented by counsel; (4)
> whether the litigant has caused needless expense to
> other parties or has posed an unnecessary burden on the
> courts and their personnel; and (5) whether other
> sanctions would be adequate to protect the courts and
> other parties.

Safir v. U.S. Lines Inc., 792 F.2d 19, 24 (2d Cir. 1986).
"Ultimately, the question the court must answer is whether a
litigant who has a history of vexatious litigation is likely to
continue to abuse the judicial process and harass other parties."
Safir v. U.S. Lines Inc., supra, 792 F.2d at 24.

      The first factor weighs heavily in favor of issuing an
anti-filing injunction.  As noted above, plaintiff has commenced
at least five actions for infringement of his '184 Patent, at
least twenty actions for infringement of his '347 Patent, and at

35

least thirteen actions for infringement of his '349 Patent, and
has not prevailed in any of these actions.  Moreover, plaintiff
has taken numerous frivolous appeals from the dismissal of these
actions.  E.g., Colida v. Sharp Elecs. Corp., supra, 125 Fed.
Appx. at 996 ("[Colida] continues his pattern of repeatedly
filing meritless infringement complaints and pursuing appeals
when the accused designs bear no realistic similarity to his
design patents."); Colida v. Sanyo N. Am. Corp., supra, 2004 WL
2853034 at *1 ("[T]his appeal continues appellant's pattern of
repeatedly filing nonmeritorious infringement complaints and then
repeatedly prosecuting nonmeritorious appeals against the
spectrum of cell phone manufacturers even though the accused
products bear no realistic similarity to his design patents.").
Given this litigation history, it appears that plaintiff will
continue to file meritless design patent infringement actions.

        The second factor -- whether the litigant had an
objective good faith expectation in prevailing -- also militates
against plaintiff.  Given the almost identical visual impressions
created by the Nokia 6101 and the Nokia 6061 and the dismissal of
his complaint in Colida I, plaintiff knew or should have known
that there was no substantial likelihood that his Amended
Complaint in this action would survive.

        The third factor -- whether the litigant is represented
by counsel -- weighs against plaintiff.  While pro se proceedings

36

generally will not support the issuance of an injunction, <u>Iwachiw</u> <u>v. New York City Bd. of Educ.</u>, 194 F. Supp.2d 194, 208 (E.D.N.Y. 2002), judges recognize that, "when it becomes clear that the courts are being used as a vehicle of harassment by a knowledgeable and articulate experienced <u>pro</u> <u>se</u> litigant who asserts the same claims repeatedly in slightly altered guise, the issuance of an injunction is warranted." <u>Kane v. City of New York</u>, 468 F. Supp. 586, 590 (S.D.N.Y. 1979)(Weinfeld, J.). Here, although plaintiff is proceeding <u>pro</u> <u>se</u>, his long history of meritless claims of design patent infringement establishes that his <u>pro</u> <u>se</u> status is not an impediment to injunctive relief.

The fourth factor -- whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel -- also militates against plaintiff. Plaintiff has filed at least ten actions in this District alone.[9] The resolution of plaintiff's frivolous claims necessarily wastes scarce judicial resources.

---

[9]<u>See Colida v. Panasonic Corp. of N. Am.</u>, 07 Civ. 4553 (S.D.N.Y. 2007); <u>Colida v. Sony Ericsson Mobile Commc'n USA Inc.</u>, 07 Civ. 9260 (S.D.N.Y. 2007); <u>Colida v. Uniden Am. Corp.</u>, 06 Civ. 947 (S.D.N.Y. 2006); <u>Colida v. Sony Ericsson Mobile Commc'n USA, Inc.</u>, 06 Civ. 257 (S.D.N.Y. 2006); <u>Colida v. Nokia Am. Corp.</u>, 05 Civ. 9920 (S.D.N.Y. 2005); <u>Colida v. Panasonic Corp. of N. Am.</u>, <u>supra</u>, 2005 WL 3046298; <u>Colida v. Sony Corp. of Am.</u>, <u>supra</u>, 2005 WL 267231; <u>Colida v. Masters</u>, 04 Civ. 8261 (S.D.N.Y. 2004); <u>Colida v. NEC USA, Inc.</u>, <u>supra</u>, 2005 WL 267417; <u>Colida v. Sony Corp. of Am.</u>, 96 Civ. 3877 (S.D.N.Y. 1996).

Lastly, the fifth factor -- whether other sanctions would be adequate to protect the courts and other parties -- weighs in favor of granting injunctive relief.  As explained above, monetary sanctions and Chief Judge Wood's express admonition in <u>Colida I</u> have not deterred plaintiff from continuing to commence frivolous claims of design patent infringement.  Thus, plaintiff's pattern of vexatious litigation will very likely continue unless an injunctive sanction is imposed.

Accordingly, defendant's request for an anti-filing injunction should be granted.  The scope of this injunction, however, should be narrowly tailored to the facts of this case.  <u>Ansley v. Green Bus Lines, Inc.</u>, 99 Civ. 10140 (DLC), 2000 WL 12120 at *2 (S.D.N.Y. Jan. 7, 2000)("[An anti-filing] injunction, while protecting the courts and parties from frivolous litigation, should be narrowly tailored so as to preserve the right of access to the courts."); <u>see</u> <u>also</u> <u>In re Martin-Trigona</u>, <u>supra</u>, 737 F.2d at 1262 (upholding leave-of-court condition in anti-filing injunction issued against vexatious litigant); <u>DePonceau v. Bush</u>, 04-CV-6240(CJS)(FE), 2004 WL 1574621 at *3 (W.D.N.Y. June 4, 2004)("[V]exatious litigants may be sanctioned in a way which limits the litigant's ability to initiate new actions unless the litigant first complies with certain conditions.").

In light of plaintiff's particular litigation history, I, therefore, recommend the following anti-filing injunction:

(1) Plaintiff is hereby permanently enjoined from filing any new action against any defendant in the Southern District of New York that arises from or relates to his '184, '347, and '349 Patents without first obtaining leave of court in accordance with the following conditions:

(A) Plaintiff shall file with the complaint of any new action a motion captioned, "Motion Pursuant to Court Order Seeking Leave to File";

(B) Plaintiff shall attach, as an exhibit to said motion, a copy of this Order;

(C) Plaintiff shall also attach, as an exhibit to said motion, an attestation under penalty of perjury that he has:

(i) complied with Rule 11 of the Federal Rules of Civil Procedure; and

(ii) complied with the conditions of this injunction;

(2) Any initial filing that does not include an attestation that meets the requirements of subdivision (C) shall be summarily dismissed pursuant to the terms of this injunction; and

(3) Any initial filing that does not comply with the terms of this injunction may subject plaintiff to sanctions and/or contempt of Court.

See generally In re Martin-Trigona, supra, 737 F.2d at 1262-63 (reviewing breadth of anti-filing injunction). Nothing in this Report and Recommendation shall be construed as denying plaintiff the right to file objections to this Report and Recommendation.

IV.   <u>Conclusion</u>

For all the foregoing reasons, I respectfully recommend that (1) plaintiff's motion for a default judgment be denied, (2) defendant's motion to dismiss for failure to state a claim (Docket Item 5) be granted in its entirety, and (3) defendant's motion for Rule 11 sanctions (Docket Item 17) be granted in part and denied in part.

Lastly, I recommend that an anti-filing injunction with the following terms should issue pursuant to Rule 11:

> (1) Plaintiff is hereby permanently enjoined from filing any new action against any defendant in the Southern District of New York that arises from or relates to his '184, '347, and '349 Patents without first obtaining leave of court in accordance with the following conditions:
>
>> (A) Plaintiff shall file with the complaint of any new action a motion captioned, "Motion Pursuant to Court Order Seeking Leave to File";
>>
>> (B) Plaintiff shall attach, as an exhibit to said motion, a copy of this Order;
>>
>> (C) Plaintiff shall also attach, as an exhibit to said motion, an attestation under penalty of perjury that he has:
>>
>>> (i) complied with Rule 11 of the Federal Rules of Civil Procedure; and
>>>
>>> (ii) complied with the conditions of this injunction;
>
> (2) Any initial filing that does not include an attestation that meets the requirements of subdivision (C) shall be summarily dismissed pursuant to the terms of this injunction; and

(3) Any initial filing that does not comply with the terms of this injunction may subject plaintiff to sanctions and/or contempt of Court.

V.  Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of this Report to file written objections. See also Fed.R.Civ.P. 6(a) and 6(d). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Kimba M. Wood, Chief Judge, United States District Court for the Southern District of New York, 500 Pearl Street, Room 1610, New York, New York 10007, and to the chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Chief Judge Wood. FAILURE TO OBJECT WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. Thomas v. Arn, 474 U.S. 140 (1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.

1992); <u>Wesolek v. Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir.

1988); <u>McCarthy v. Manson</u>, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:  New York, New York
        May 6, 2008

                        Respectfully submitted,


                        HENRY PITMAN
                        United States Magistrate Judge


Copies mailed to:

Mr. Tony Colida
Suite 811
6280 Decarie Boulevard
Montreal, Quebec
Canada  H3X 2K1

David R. Francescani, Esq.
Jorge M. Torres, Esq.
Fish & Richardson P.C.
Citigroup Center
153 East 53rd Street
52 Floor
New York, New York  10022

**EXHIBIT 1**

# United States Patent [19]

## Elbaz et al.

[11] Patent Number: **Des. 318,050**

[45] Date of Patent: ** **Jul. 9, 1991**

[54] **CELLULAR PORTABLE TELEPHONE**

[75] Inventors: **Jacques Elbaz; Tony Colida,** both of Montreal, Canada

[73] Assignee: **President Electronic Canada Limited,** Montreal, Canada

[**] Term: **14 Years**

[21] Appl. No.: **476,285**

[22] Filed: **Feb. 7, 1990**

[52] U.S. Cl. ................................. **D14/138; D14/147; 455/90**

[58] Field of Search ...................... D14/138, 147, 148; 379/58, 59, 433, 440, 434; 455/89, 90

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D. 184,307 | 1/1959 | Dreyfuss et al. | D14/148 |
| D. 189,877 | 3/1961 | Mosing et al. | D14/148 |
| D. 200,158 | 1/1965 | Zanuso et al. | D14/147 |
| D. 207,490 | 4/1967 | Zanuso et al. | D14/147 |
| D. 207,491 | 4/1967 | Zanuso et al. | D14/147 |
| D. 215,664 | 10/1969 | Dreyfuss et al. | D14/148 |
| D. 257,977 | 1/1981 | Blomberg | D14/138 |
| D. 258,958 | 4/1981 | Fukushima et al. | D14/138 |
| D. 275,950 | 10/1984 | Marshall | D14/147 |
| D. 277,281 | 1/1985 | Tzukamoto et al. | D14/138 |
| D. 282,738 | 2/1986 | Nichols | D14/138 |
| D. 298,036 | 10/1988 | Watanabe | D14/138 |
| D. 300,742 | 4/1989 | Soren et al. | D14/138 X |
| D. 300,827 | 4/1989 | Soren et al. | D14/138 |
| D. 303,259 | 9/1989 | Deighan | D14/138 |
| D. 305,427 | 1/1990 | Soren et al. | D14/138 |

### FOREIGN PATENT DOCUMENTS

0086929 4/1988 Japan ..................................... D14/138

### OTHER PUBLICATIONS

Motorola Sheet, Circle No. 12; Electronic, 6/90.
GTE Flip Phone; shown in Telephony 07/16/79; four pictures.
Owner's Manual: Duofone ET–415, Cat. No. 43–555; Cordless Electronic Telephone; 3 pages.

*Primary Examiner*—Horace B. Fay, Jr.

[57] **CLAIM**

The ornamental design for cellular portable telephone, as shown and described.

**DESCRIPTION**

FIG. 1 is a left side on a front perspective view of a cellular portable telephone showing our new design; FIG. 2 is a right side elevational view thereof; and FIGS. 3 and 4 are respectively front and rear elevational views thereof.



**U.S. Patent**     July 9, 1991     Sheet 1 of 2     **Des. 318,050**



FIG. I

Case 1:07-cv-08056-KMW-HBP     Document 23     Filed 05/06/2008     Page 46 of 63



FIG. 4

FIG. 3

FIG. 2

**EXHIBIT 2**

# United States Patent [19]

## Colida

[11] Patent Number: **Des. 321,347**

[45] Date of Patent: ∗∗ **Nov. 5, 1991**

[54] **PORTABLE CELLULAR HANDSET TELEPHONE**

[76] Inventor: **Tony Colida,** 2672 Bedford Road, Montréal, Québec, Canada, H3S-1G1

[∗∗] Term: **14 Years**

[21] Appl. No.: **513,165**

[22] Filed: **Apr. 23, 1990**

[52] U.S. Cl. .................................. **D14/138;** D14/147; D14/248

[58] Field of Search ...................... D14/147, 148, 138; 379/423, 68; 455/89, 90

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D. 254,435 | 3/1980 | Ferron | D14/147 |
| D. 276,520 | 11/1984 | Breslow et al. | D14/143 |
| D. 281,686 | 12/1985 | Rivette et al. | D14/143 |
| D. 291,991 | 9/1987 | Lee | D14/147 |
| D. 298,621 | 11/1988 | Willis | D14/147 |
| D. 302,689 | 8/1989 | Murakami et al. | D14/138 |
| D. 306,294 | 2/1990 | Watanabe | D14/148 |
| D. 306,298 | 2/1990 | Sawada et al. | D14/148 X |
| 4,481,382 | 11/1984 | Villa-Real | 379/68 X |
| 4,845,772 | 7/1989 | Metrooka et al. | 379/433 X |

### FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 0164743 | 7/1988 | Japan | 379/434 |
| 0106658 | 4/1989 | Japan | 379/434 |
| 0212052 | 8/1989 | Japan | 379/434 |

### OTHER PUBLICATIONS

Telephony, Jul. 16, 1979; GTE Flip-Phone.

*Primary Examiner*—Horace B. Fay, Jr.

[57] **CLAIM**

The ornamental design for a portable cellular handset telephone, as shown and described.

**DESCRIPTION**

FIG. 1 is a left side, top a front perspective view of a portable cellular handset telephone showing my new design in opened position;
FIG. 2 is a front elevational view thereof;
FIG. 3 is a rear elevational view thereof;
FIG. 4 is a bottom plan view thereof in closed position;
FIG. 5 is a top plan view thereof in closed position;
FIG. 6 is a right side elevational view thereof;
FIG. 7 is a bottom plan view thereof in closed position; and
FIG. 8 is a front elevational view thereof in closed position.




**U.S. Patent**      Nov. 5, 1991      Sheet 1 of 2      **Des. 321,347**



*FIG. 3*





*FIG. 2*



*FIG. 1*





FIG. 8



FIG. 5



FIG. 6



FIG. 7



FIG. 4

**EXHIBIT 3**

# United States Patent [19]

## Colida

[11] **Patent Number:** **Des. 321,349**

[45] **Date of Patent:** ✶✶ **Nov. 5, 1991**

[54] **CELLULAR PORTABLE HANDSET TELEPHONE**

[76] Inventor: **Tony Colida**, 2672 Bedford Rd., Montreal, Quebec, Canada, H3S-1G1

[✶✶] Term: **14 Years**

[21] Appl. No.: **521,660**

[22] Filed: **May 10, 1990**

[52] U.S. Cl. ................................. D14/138; D14/147; D14/248

[58] Field of Search ............. D14/147, 138, 148, 151; 379/368, 433; 455/89, 90, 80

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D. 244,849 | 6/1977 | Todeschini | D14/147 |
| D. 254,195 | 2/1980 | Genaro et al. | D14/151 X |
| D. 284,468 | 7/1986 | Matras | D14/63 X |
| D. 302,689 | 8/1989 | Murakami | D14/148 X |
| D. 304,189 | 10/1989 | Nagele et al. | 379/433 X |
| D. 315,731 | 3/1991 | Watanabe | D14/148 |
| 4,736,411 | 4/1988 | Chan | 379/368 |
| 4,845,772 | 7/1989 | Metroka | 379/433 X |

### OTHER PUBLICATIONS

Telephony Magazine, Jul. 16, 1979; GTE F11P–Phone.
Radio Shack ET–416; Ad; Handset 43–556; Price $119.95.
"Electronics", Jun. 1990; Motorola Folding Handset, Radio Digital Telephone.
Electronic Edge, American Express Brochure; at p. 20, Panasonic Folding Cordless Phone #23127–12.

*Primary Examiner*—Horace B. Fay, Jr.

[57] **CLAIM**

The ornamental design of a cellular portable handset telephone, as shown and described.

**DESCRIPTION**

FIGS. 1 and 2 are respectively front and rear elevational views of a cellular portable handset telephone showing my new design in opened posture;
FIG. 3 is a left side elevational view thereof in closed position, the side opposite being a mirror image;
FIGS. 4 and 5 are respectively rear and front end elevational view thereof; and
FIG. 6 is a left side, top and front perspective view thereof is opened position.





**U.S. Patent**          Nov. 5, 1991          Sheet 1 of 2          Des. 321,349

## FIG. 1          FIG. 2

 

## FIG. 3



**U.S. Patent**    Nov. 5, 1991    Sheet 2 of 2    **Des. 321,349**

*FIG. 4*



*FIG. 5*



*FIG. 6*



**EXHIBIT 4**

# United States Patent [19]

## Colida

[11] **Patent Number:** **Des. 321,184**

[45] **Date of Patent:** ** **Oct. 29, 1991**

[54] **PORTABLE CELLULAR HANDSET TELEPHONE**

[76] Inventor: **Tony Colida,** 2672 Bedford Rd., Montreal, Quebec, Canada, H3S-1G1

[**] Term: **14 Years**

[21] Appl. No.: **507,185**

[22] Filed: **Apr. 10, 1990**

[52] U.S. Cl. ................................ **D14/138;** D14/147; D14/248

[58] Field of Search .................... D14/147, 148, 138; 379/433; 455/89, 90

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D. 190,867 | 7/1961 | Mosing | D14/147 |
| D. 255,681 | 3/1980 | Read et al. | D14/147 |
| D. 270,445 | 9/1983 | Chen | D14/147 |
| D. 278,053 | 3/1985 | Menn et al. | D14/147 |
| D. 283,709 | 5/1986 | Williams et al. | D14/147 |
| D. 300,743 | 4/1989 | Zaugg et al. | D14/147 |
| d. 301,874 | 6/1989 | Roegner | D14/148 |
| D. 305,118 | 12/1989 | Pfeifer et al. | D14/147 |
| D. 311,397 | 10/1990 | Cheng | D14/148 X |
| D. 315,347 | 3/1991 | Walker | D14/147 |

*Primary Examiner*—Horace B. Fay, Jr.

[57] **CLAIM**

The ornamental design for portable cellular handset telephone, as shown and described.

### DESCRIPTION

FIG. 1 is a left side elevational view of a portable cellular handset telephone showing my new design;

FIG. 2 is a front elevational view thereof;

FIG. 3 is a rear elevational view thereof;

FIG. 4 is a bottom plan view thereof; and

FIG. 5 is a front, top and right side perspective view thereof.





Case 1:07-cv-08056-KMW-HBP    Document 22    Filed 05/06/2008    Page 57 of 63



FIG. 4

FIG. 3

FIG. 2

FIG. 1

Case 1:07-cv-08056-KMW-HBP    Document 22    Filed 05/06/2008    Page 58 of 63

*FIG. 5*



**EXHIBIT 5**

Nokia - Nokia 6061 - Standard Express - GSM - Nokia USA



# NOKIA
## Connecting People

Home • Find products • Get support and software • Explore services • Visit a store • Music •

Go

Compare Phones

Buy accessories



## Nokia 6061 phone

- Nokia 6061
- Technical specifications



Compare
models

- Access the features you need with the user-friendly Nokia menu structure
- Handsome fold design
- Multimedia Messaging Service1,14
- Keep track of everything you need with organizational tools
- Service: AT&T, Centennial Wireless,

# 1. Check it out.

**1. Left and right selection keys**
Press to activate the menu option shown above each key.
In the standby mode, these keys act as customizable shortcuts
to your most commonly used features.

**2. Call key**
Dials a phone number or answers a call.
You can also answer a call by opening the fold.
In the standby mode, press once to access your recently
dialed numbers or press twice to redial.

**3. Navigation key***
In the standby mode, use the five way scroll key
for instant access to:
  Press left for New Message
  Press right to access the Calendar
  Press up or down to access Contacts
  Press the center selection to access the Menu

**4. Power and end key**
Press and hold to turn the phone on or off.
Ends the active call or exits from any function.

**5. Loudspeaker**
Enables you to talk handsfree. To activate,
press the right selection key labeled **Loudsp.** when in a call.

**6. Pulsating light**
Shows when a call is received.

* Navigation key assignments may vary by service provider.



**EXHIBIT 6**


